IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1998 SESSION

FILED

April 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9703-CC-00125 |
| Appellee, | * | MADISON COUNTY |
| VS. | * | Hon. Franklin Murchison, Judge |
| JAMES BYRON TRANSOU, | * | (Attempted First Degree Murder and |
| Appellant. | * | Aggravated Assault) |

For Appellant:

Daniel J. Taylor
Assistant Public Defender
227 West Baltimore Street
Jackson, TN  38301
(on appeal)

Pamela J. Drewery
Assistant Public Defender
227 West Baltimore Street
Jackson, TN  38301
(at trial)

For Appellee:

John Knox Walkup
Attorney General and Reporter

Deborah A. Tullis
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Donald H. Allen
Assistant District Attorney General
P.O. Box 2825
Jackson, TN  38302

OPINION FILED:_____

AFFIRMED IN PART; REVERSED AND DISMISSED IN PART

GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, James Byron Transou, was convicted of attempted first degree murder and aggravated assault. The trial court imposed concurrent, Range II sentences of thirty-five years and eight years.

In this appeal of right, the defendant claims that the evidence is insufficient to support the conviction of attempted first degree murder and that convictions for both attempted first degree murder and aggravated assault violate double jeopardy principles.

We affirm the conviction for attempted first degree murder. The conviction for aggravated assault must be reversed and dismissed.

The defendant and his former girlfriend, Tammy Curry, have a five-year-old son, Brison. The victim, Terrance Woods, had been dating Ms. Curry for approximately four and one-half years at the time of the trial in 1996. Ms. Curry also has another child, Triston.

On the afternoon of August 18, 1995, the victim was washing his car at a carwash on Whitehall Street in Jackson when he observed the defendant and his brother, Keith Transou, in a gray four-door Celebrity automobile. The victim described the men as looking in his direction "shaking their heads and calling in a wild, crazy way." The defendant remarked to him, "Bitch, we need to stop playing." The victim testified that after he got in his Chevrolet automobile and began to drive away, the defendant, who was driving the Celebrity, pulled alongside, aimed a pistol through the open window on the passenger's side, and fired three or four shots. One bullet struck a tire on the victim's automobile and three others grazed the

2

passenger side door. Woods recalled that he then lost control of his car and spun into a vacant lot. Although frightened, the victim was not injured by any of the shots.

Vanessa Robertson lived nearby. At trial, she testified that she saw the defendant, who was driving a Celebrity, fire several shots out of the passenger window of his vehicle towards a green Chevrolet driven by the victim. She recalled that the defendant's brother, who was sitting in the passenger's seat at the time of the shooting, leaned back as the shots were being fired.

Kentry Burris, a cousin to Ms. Curry, was at a convenient market just prior to the shooting. As he walked away from the market, he heard squealing tires and saw the victim in his Chevrolet being chased by a white Celebrity automobile. Burris testified that he heard four to five shots just as the automobiles were driven out of his sight. When he arrived at the scene, he observed .32 or .38 caliber shell casings in the street. Burris observed another person in the car with the defendant. He was unable to say who fired the shots.

William Goodman, who was with Burris at the time of this incident, testified that he also heard gunshots and saw a green car, driven by the victim, spinning out of control in a vacant lot. Goodman recalled hearing four shots and seeing a white car speed away from the scene after the shots were fired. He also observed the spent shells.

Police recovered three .38 caliber bullet casings at the location described by Burris and Goodman. The bullets were from a gun with an automatic cartridge. Officer David Russell of the Jackson Police Department, interviewed the victim and several other witnesses. He estimated that the distance between the car

3

wash area and where the shell casing were found was about seventy-five yards.

There was testimony that in July of 1995, about one month before the incident leading to these convictions, the victim drove Brison to the defendant's residence for child visitation. As Brison got out of the car, the defendant pointed a .38 revolver to his head, called him names, and threatened to kill him. The victim sought a warrant. Two or three days later, the defendant approached Ms. Curry while she was at work and threatened to kill her and the victim. Again, the police were contacted.

The defendant claimed self-defense. He testified that he and his son drove by the carwash just after leaving a doctor's office. The defendant claimed that the victim, armed with a gun, attempted to get him to stop. He contended that he left the area and went to a friend's house where he obtained a .38 pistol. He explained that he had been joined by his brother, Keith, just before the victim blocked him with his vehicle. The defendant insisted that his brother fired the shots out of fear of the victim. He claimed that the victim lost control of his vehicle just before the shots were fired. The defendant also denied having pointed a gun at the victim in the July 1995 incident and insisted that he had never made any threats against him. On cross-examination, the defendant acknowledged that between 1990 and 1995, he had been convicted for robbery, aggravated assault, felony reckless endangerment, forgery, and supplying false information to a police officer.

Keith Transou, who testified on rebuttal for the state, confirmed that he was in the passenger's seat of the defendant's vehicle at the time of the shooting. He denied having fired any of the shots and contended that the defendant had attempted to shoot the victim. He also stated that the victim displayed a pistol at the

4

carwash.  He testified that the victim was following them in his vehicle just before the shots were fired; however, he did not see the victim in possession of a gun at that time.

I

The defendant insists that the state was unable to prove that he actually intended to cause the death of the victim.  He points out that the shots struck the left front tire and the passenger door of the victim's vehicle.  He argued that the evidence showed nothing more than an attempt to scare the victim or cause damage to his vehicle.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  A conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."  Tenn. R. App. P. 13(e).  A guilty verdict, approved by the trial judge, accredits the testimony of the witnesses for the state.  State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

First degree murder is defined as the premeditated and intentional killing of another.  Tenn. Code Ann. § 39-13-202(a)(1).  Criminal attempt is defined as follows:

> (a)  A person commits criminal attempt who, acting with the culpability otherwise required for the offense:
>   (1)  Intentionally engages in action or causes a result that would constitute an offense if the circumstances

5

surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

Tenn. Code Ann. § 39-12-101.

The state introduced proof that the defendant had on at least one prior occasion threatened to kill the victim. Within a month thereafter, he observed the victim, borrowed a pistol, returned to where he had seen the victim, and then fired several shots at the victim, causing his vehicle to spin out of control in an empty field. The defendant's brother testified that the defendant shot at the victim. Bullets struck a tire on the driver's side and the door on the passenger's side. In our view, the jury acted within its prerogative in determining that the conduct of the defendant was a substantial step towards the commission of first degree murder. The evidence of guilt satisfies the standard prescribed in Tenn. R. App. P. 13(e); see Jackson v. Virginia, 443 U.S. 307 (1979).

II

Next, the defendant contends that convictions for both attempted first degree murder and aggravated assault would violate double jeopardy principles. Tenn. Const., art. I, § 10. The trial judge acknowledged that the two offenses

6

should have merged but was uncertain of which should remain. The state concedes that the lesser offense of aggravated assault should be reversed and dismissed.

In State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996), our supreme court established a four-prong analysis in an effort to provide guidance on whether two convictions arising out of the same facts are proper:

> (1) An analysis under Blockburger v. United States, 284 U.S. 299, 304 (1932):
>
>> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether they are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
>
> (2) An analysis of the evidence used to prove the offenses guided by the principles of Duchac v. State, 505 S.W.2d 237, 239 (Tenn. 1973):
>
>> One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.
>
> (3) A consideration of whether there were multiple victims or discrete acts; and
>
> (4) A comparison of the purposes of the respective statutes.

Denton, 938 S.W.2d at 379-81. The supreme court pointed out that none of the prongs of the test were determinative and that "the results of each must be weighed and considered in relation to each other." Id.

Recently, this court applied the Denton test in an effort to determine whether convictions for attempt to commit second degree murder and aggravated assault violated double jeopardy principles. State v. Hall, 947 S.W.2d 181 (Tenn.

7

Crim. App. 1997). While acknowledging that the two convictions "passed" the Blockburger test, this court determined that because the evidence used to prove both offenses was the same, the rationale of Duchac would preclude an aggravated assault conviction. Id.

In this case, there were neither discrete acts nor multiple victims. A comparison of the respective statutes suggest that, as in Denton, "it is unreasonable to assume that the legislature intended that a defendant who commits one assault on a single victim be convicted of both aggravated assault and attempted homicide." Denton, 938 S.W.2d at 382. That view is buttressed by the following statute:

> When the same conduct may be defined under two (2) or more specific statutes, the person may be prosecuted under either statute unless one (1) specific statute precludes prosecution under another.

Tenn. Code Ann. § 39-11-109(b) (1991). The word "either" rather than "both" suggests a legislative intent of a single prosecution.

The conviction for aggravated assault must be reversed and dismissed. Otherwise the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
Joe B. Jones, Presiding Judge


_____
Jerry L. Smith, Judge