IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS SEPTEMBER 21, 2000

## IN THE MATTER OF: ERIC DYLAN PETTY, A Child Under the Age of 18 Years

**Direct Appeal from the Circuit Court for Obion County
No. 0-125; The Honorable William B. Acree, Jr., Judge**

-----

**No. W2000-00907-COA-R3-CV - Filed December 1, 2000**

-----

This case involves an appeal regarding the lower court's determination that Eric Dylan Petty was a delinquent child. In February 2000, a petition was filed with the Juvenile Court of Obion County alleging that Eric Dylan Petty committed the delinquent acts of aggravated assault and vandalism. The juvenile court determined that Petty was delinquent and ordered him committed to the Tennessee Department of Children's Services. After a *de novo* hearing, the circuit court also declared Petty delinquent based on the acts of aggravated assault and vandalism and affirmed Petty's commitment to the Department of Children's Services. This appeal followed.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

C. Michael Robbins, Memphis; Joseph P. Atnip, Dresden, for Appellant, Eric Petty

Paul G. Summers, Attorney General & Reporter, Kim R. Helper, Assistant Attorney General, Nashville, for State of Tennessee

### OPINION

### Facts and Procedural History

During the evening of February 14, 2000, Eric Dylan Petty ("Dylan") was angry because he could not find a ride to his girlfriend's house. Dylan wanted to spend Valentine's Day with his girlfriend. Dylan tried to persuade his mother to take him to his girlfriend's house, but she refused because it was too late in the evening. Dylan's father testified that Dylan was "mad and fussing" about the incident. Dylan became angry and used a knife to stab the wall and a detergent bottle. Additionally, Dylan kicked over an electric heater that was in the hallway. After Dylan kicked the heater over, his father left the house and called the police. Ms. Petty further testified that she and Dylan's father have called the police between five and ten times before to help with Dylan.

When the police arrived at the Petty home, Ms. Petty met the officers at the door. Ms. Petty told the officers that Dylan had a knife and that he was mad and she did not know what to do. Officer Crocker testified that Ms. Petty stated that she was afraid of Dylan and that she did not know what he was capable of doing. When the officers attempted to speak with Dylan in his room, he started cursing at the officers, and he told them to get out of his house. Dylan also stated that no one was going to arrest him or he would hurt somebody. At that time, the officers placed Dylan under arrest. Dylan fought the arrest at first, but then calmed down after the officers threatened him with pepper spray. As the officers were preparing to leave with Dylan, he kicked the driver's side rear window out of one of the officer's patrol cars.

On February 14, 2000, a petition was filed with the Juvenile Court of Obion County alleging that Dylan committed the delinquent acts of aggravated assault and vandalism. The juvenile court determined that Dylan was delinquent and ordered him committed to the Department of Children's Services. After a *de novo* hearing, the circuit court also declared Dylan delinquent based on the acts of aggravated assault and vandalism and affirmed his commitment to the Department of Children's Services. This appeal followed.

The sole issue for our review is whether the evidence is sufficient to sustain a finding of delinquency and a committal to the Department of Children's Services.[1]

**Law and Analysis**

A minor may be considered delinquent if he has committed a delinquent act and is in need of treatment or rehabilitation. A delinquent act is basically an act performed by a minor, which would be a criminal offense if it were performed by an adult. See Tenn. Code Ann. § 37-1-102 (Supp. 1999).

For purposes of the criminal code, assault is defined as intentionally, knowingly or recklessly causing bodily injury to another or intentionally, knowingly or recklessly causing another to reasonably fear imminent bodily injury. See Tenn. Code Ann. § 39-13-101 (1997). Moreover, a person commits aggravated assault if he intentionally or knowingly commits an assault as defined in section 39-13-101 of the Tennessee Code and uses or displays a deadly weapon. See Tenn. Code Ann. § 39-13-102 (Supp. 1999).

While section 37-1-133 of the Tennessee Code specifically mandates that a finding of delinquency is not criminal, we observe that common law, statutory and constitutional principles protect the rights of juveniles in the same manner as they protect the rights of adults. In State v. Johnson, 574 S.W.2d 739, 741 (Tenn. 1978), the court said,

> Despite the stated purpose and the theory underlying the juvenile
> court system, however, courts in recent years have emphasized that

---

[1] It was stipulated that Dylan was guilty of vandalism. Thus, the only issue for our review is the aggravated assault charge.

in practical effect persons involved in juvenile proceedings may be deprived of their liberty. Increasingly, concepts of the criminal law, and in particular constitutional principles designed to protect the rights of individuals charged with a crime, have been deemed to be applicable to proceedings involving juvenile offenders.

Section 37-1-129(b) of the Tennessee Code demands proof beyond a reasonable doubt before the court may find delinquency. As a result, we apply a reasonable doubt appellate standard whereby the trial court judgment must be set aside if we find the evidence insufficient to support guilt beyond a reasonable doubt. Under the reasonable doubt standard, the Supreme Court of Tennessee has stated:

> When the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, (1979); TENN. R. APP. P. 13(e). A jury verdict approved by the trial judge credits the testimony of the witnesses for the State and resolves all conflict in favor of the State's theory. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), which the Defendant has the burden of overcoming. See State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992).

The only disputed question is whether the evidence establishes, beyond a reasonable doubt, that Dylan was guilty of aggravated assault.

Dylan disputes that he is guilty of aggravated assault. First, Dylan points to the testimony of his father, Danny Petty. Danny Petty testified that he was not in fear of Dylan, but he was worried about Dylan tearing something up. Further, Danny Petty testified that he was not afraid that Dylan would hurt his wife or his eight year old son. Danny Petty also testified that he knew Dylan had the knife, but he could not remember if he saw Dylan while he had the knife. Moreover, Danny Petty averred that Dylan never pointed the knife at him or his wife. We note that Danny Petty felt it necessary to leave the house to call the police and a question arises as to why if he was not afraid of his son. At trial, the court asked Danny Petty, "[a]nd why did you not call [the police] from your

-3-

home?" Mr. Petty responded, "[w]ell, he [Dylan] was on the phone . . . I didn't wanna make the situation worse."

Next, Dylan relies on the testimony of his mother, Donna Petty. Ms. Petty testified that Dylan never threatened her or pointed the knife at her. Ms. Petty also testified that the reason her husband called the police on the night in question was because they were afraid that Dylan might tear up something in the house.

Finally, David Crocker, one of the officers that responded to the call at the Petty home, testified that Ms. Petty told him that Dylan was mad, that he had a knife, and that she did not know what to do because Dylan was out of control. Moreover, Officer Crocker stated that Ms. Petty said that she was afraid of Dylan and that she did not know what he was capable of doing. Additionally, Officer Crocker stated that Dylan said that no one was going to arrest him because he would hurt somebody. At that time, Officer Crocker and the other officer present attempted to place Dylan under arrest. The officers had to physically take Dylan down to the floor and threaten him with pepper spray to keep him from fighting.

At trial, the court stated, "[c]onsidering all of the evidence as a whole, I'm certainly satisfied that both Mr. and Ms. Petty were fearful of their son and found it necessary to call the police. The evidence . . . indicates fear. I have also taken into account all the circumstances, as they testified, and was testified to by the officers, I'm satisfied that this element [fear] existed."

We agree with the trial court and find that, viewed as it must be in the light most favorable to the state, the evidence supports the finding of the circuit court beyond a reasonable doubt that Dylan was guilty of aggravated assault.

### Conclusion

The judgment of the trial court is affirmed. Costs on appeal are taxed against the Appellant, Eric Dylan Petty.

_____
ALAN E. HIGHERS, JUDGE

-4-