**STATE of Tennessee, Petitioner,**

v.

**John L. HATCHETT, Respondent.**

Supreme Court of Tennessee.

Jan. 16, 1978.

**628**

Brooks McLemore, Jr., Atty. Gen., William W. Hunt, III, Asst. Atty. Gen., Nashville, Howard Douglas, Asst. Dist. Atty. Gen., George Hymers, Dist. Atty. Gen., Lexington, for petitioner.

David P. Murray, H. T. Etheridge, Jr., Jackson, for respondent.

## OPINION

FONES, Justice.

Defendant John L. Hatchett was indicted for larceny and concealing stolen property, two bird dogs. Defendant expressly waived his right to trial by jury and submitted his case to the trial judge for decision as to both guilt and punishment. He was convicted of concealing stolen property and sentenced to a minimum and maximum of 3 years in the State Penitentiary.

The Court of Criminal Appeals reversed the conviction and remanded the case on the ground that the State had not introduced evidence to prove that defendant had concealed the dogs with knowledge that they were stolen. On the State's petition to rehear, that Court conceded that unexplained possession of recently stolen property may permit the trier of fact to draw the inference that the possessor of the property knew that it was stolen, but overruled the petition because, it was said, the State's argument overlooked "passions which can be aroused in the breast of any healthy, red blooded, Tennessee sportsman where a good bird dog may be involved."

A summary of the pertinent evidence introduced at trial follows:

The owner of the bird dogs, Thomas Overman, testified that on the afternoon of October 15, 1975, he returned home to find two boards missing from the floor of the building where he kept the dogs, and the dogs gone. The next day, Overman questioned defendant about his dogs and defendant told Overman that he had sold two dogs which might be Overman's dogs to Fred Pirtle in Memphis the day before.

After separate telephone calls by both Overman and defendant to Pirtle in Memphis, Overman went to Memphis, repurchased the dogs for the $200.00 which Pirtle had paid for them, and returned to Lexington, where he swore out a warrant for defendant's arrest.

Overman further testified that defendant paid him $500.00 for the expense of repurchasing his dogs and for his "trouble" getting the dogs back. Overman had agreed to drop the charges and defendant paid the court costs in the General Sessions Court. Overman originally paid $165.00 for the two dogs.

Defendant testified that he sold or traded approximately 150 dogs a year and that people whom he did not know would approach him about buying or trading dogs.

Defendant testified that, on the morning of October 3rd or 4th, he was preparing to go to Memphis to sell two setters and a pointer; that he had called Pirtle and arranged to meet him at 12:00 o'clock; that a man driving a white Chevrolet, 1961 or 1963 model, came to his house and offered to sell

him two dogs for $125.00, but he bought them for $60.00.

On direct examination, defendant testified that he did not know the name of the man he bought the dogs from, but he thought he had "traded" with him before, up in Kentucky; that defendant had driven three or four thousand miles, "all through Mississippi and Kentucky," looking for him, but had been unable to find him.

On cross-examination, defendant was asked if he had not told the Assistant District Attorney on the telephone that he had bought two dogs "over around Huntingdon somewhere." Defendant's response was this:

"I said the license number was 38, that's from Huntingdon, Carroll County."

Defendant offered no evidence that a search was made in Carroll County for the man who had sold him the Overman dogs, nor any reasonable explanation of why he drove three or four thousand miles in Mississippi and Kentucky looking for the alleged seller.

Defendant's direct testimony was clearly to the effect that he had made arrangements to drive to Memphis before acquiring Overman's dogs, for the purpose of offering three other dogs for sale to Pirtle. When asked on cross-examination about the other three dogs, he testified that on the way to Pirtle's house, he sold one dog to a man in Braden, Tennessee, and another dog to a man in Ellendale. No explanation was offered for not taking all five dogs to Pirtle first, which seemed particularly called for since defendant had emphasized that he cut short negotiations for purchase of Overman's dogs sometime around 9:15 A.M. because he had to meet Mr. Pirtle at 12:00 o'clock in Memphis, casting doubt upon the question of whether he had time to make two stops and negotiate two sales. There was no corroboration of the alleged sales in Braden and Ellendale.

Defendant's yardman corroborated his story, testifying that he had been working in the yard on the day the defendant purchased the dogs and took them to Memphis and that he had witnessed something that might have been a sale of dogs to Hatchett. The yardman was unable to give any details of the transaction nor could he describe the dogs or the automobile which brought them.

The defense introduced several witnesses who testified to defendant's good reputation and that receipts were a rarity in transactions for non-pedigreed bird dogs. Throughout the trial, it was undisputed that the dogs which defendant sold to Pirtle belonged to Overman.

■ Conviction for concealing stolen property requires proof of the theft, defendant's possession with knowledge that the goods were stolen, and concealment thereof. Possession of recently stolen property, if not satisfactorily explained, is a circumstance from which the trier of fact may draw an inference and find that the person in possession knew the property had been stolen. *State v. Veach,* 224 Tenn. 412, 456 S.W.2d 650 (1970); *Tackett v. State,* 223 Tenn. 176, 443 S.W.2d 450 (1969); see also *Bush v. State,* 541 S.W.2d 391 (Tenn.1976); *Turner v. State,* 541 S.W.2d 398 (Tenn. 1976).

■ An unsatisfactorily explained possession of very recently stolen property may, in the light of surrounding circumstances, support a conviction of larceny, as well as supply the element of guilty knowledge for the offenses of receiving stolen property or concealing stolen property. See *Tackett v. State, supra; Bush v. State, supra; Turner v. State, supra.*

Defendant insists that the State did not show concealment of Overman's dogs because defendant transported them openly in his truck to Memphis; that upon learning that Overman's two bird dogs had been stolen, defendant promptly revealed the sale to Pirtle of two dogs, although denying any knowledge that they belong to Overman.

**630**

The dogs were stolen after 6:30 A.M. October 15, 1975. Defendant admitted that he was in possession of the dogs by 9:00 A.M. to 9:30 A.M. the same day.[1]

Defendant almost immediately departed Lexington, Tennessee, for Memphis, for the purpose of selling the dogs.

The crime of concealing stolen property does not require an actual hiding or secreting of the property; it is sufficient to show any acts which render its discovery more difficult and prevent identification, or which will assist those stealing it in converting the property to their own use. *Bates v. State,* 516 S.W.2d 635 (Tenn.Crim. App.1974); *Abbott v. State,* 509 S.W.2d 524 (Tenn.Crim.App.1973); *Jones v. State,* 219 Tenn. 228, 409 S.W.2d 169 (1966).

The rapid transportation and sale of the dogs clearly provided sufficient evidence of intent to make discovery more difficult and to convert the property to defendant's own use. The fact that defendant revealed the sale to Overman the next day, while admittedly a circumstance to be weighed in determining the truthfulness of his testimony, does not diminish the evidence of concealment inherent in the transportation to Memphis and sale of the dogs to Pirtle.

In addition to the discrepancies in the defendant's exculpatory evidence herein mentioned, the trial judge could have considered the fact that defendant paid Overman $500.00 shortly after Overman swore out the warrant against him as discrediting defendant's testimony. An offer to compromise is admissible in criminal cases. E. g., *Carter v. State,* 161 Tenn. 698, 34 S.W.2d 208 (1931); *Armes v. State,* 540 S.W.2d 279 (Tenn.Crim.App.1976); *Johnson v. State,* 4 Tenn.Crim.App. 154, 469 S.W.2d 529 (1971). The compromise is admissible as a circumstance bearing on the consciousness of the guilt of the accused, to be given such weight as the trier of fact might see fit. *Carter v. State, supra.*

In our opinion, the evidence, both direct and circumstantial, clearly supports the conviction of concealing stolen property. It is not the function of either the Court of Criminal Appeals or this Court to reweigh evidence adduced at a criminal trial; a guilty verdict, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in testimony in favor of the theory of the State. E. g., *State v. Wilson,* 556 S.W.2d 232 (Tenn. 1977); *State v. Brown,* 551 S.W.2d 329 (Tenn.1977); *State v. Johnson,* 541 S.W.2d 417 (Tenn.1976); *State v. Sneed,* 537 S.W.2d 699 (Tenn.1976); *State v. Grace,* 493 S.W.2d 474 (Tenn.1973).

In a case tried without a jury, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. *Webster v. State,* 544 S.W.2d 922 (Tenn. Crim.App.1976); see *United States v. Glover,* 514 F.2d 390 (9th Cir. 1975).

The judgment of the Court of Criminal Appeals is reversed, the conviction and sentence of the trial court reinstated.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

---

1. Pirtle testified and offered as an exhibit a receipt or bill of sale for Overman's dogs dated October 15, 1975. Defendant's explanation of his testimony that he bought and sold the dogs on October 3rd or 4th was that Overman had testified at an earlier hearing that his dogs were stolen on one of those dates.