IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

FEBRUARY 1998 SESSION

FILED

March 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9708-CC-00199 |
| Appellee, | * | FRANKLIN COUNTY |
| VS. | * | Hon. Buddy D. Perry, Judge |
| RICHARD D. SAWYER, | * | (DUI, Third Offense and Driving on a |
| Appellant. | * | Revoked License, Second Offense) |

For Appellant:

Robert S. Peters
Swafford, Peters & Priest
100 First Avenue, Southwest
Winchester, TN 37398
(at trial and on appeal)

Timothy Priest
Swafford, Peters & Priest
100 First Avenue, Southwest
Winchester, TN 37398
(at sentencing)

For Appellee:

John Knox Walkup
Attorney General and Reporter

Ruth Anne Thompson
Counsel for the State
425 Fifth Avenue North
Cordell Hull Building, Second Floor
Nashville, TN 37243-0493

Stephen M. Blount
Assistant District Attorney General
324 Dinah Shore Boulevard
Winchester, TN 37398

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, Richard D. Sawyer, was convicted of driving under the influence, third offense, and driving on a revoked license, second offense. The trial court imposed concurrent sentences of eleven months and twenty-nine days for driving under the influence and ninety days for driving on a revoked license. <u>See</u> Tenn. Code Ann. §§ 55-10-401(a) and 55-50-504(a)(1). The defendant was fined $1,050.00.

In this appeal of right, the defendant challenges the sufficiency of the evidence and argues that the sentence was excessive. We affirm the judgment of the trial court.

At 1:16 A.M. on April 4, 1995, Cowan Assistant Police Chief Tony Bean observed a brown Ford LTD veer several times outside of its line of traffic. Officer Bean, accompanied by Officer Chris Fann, stopped the vehicle and determined that the defendant, the only occupant, was the driver. When the defendant stepped out of the car, Officer Bean smelled alcohol and could see vomit on the defendant's pants and shirt. The defendant explained that he had been playing pool at the Pit Stop when he became ill and decided to go home. When asked whether he needed an ambulance, the defendant declined. Officer Bean then administered four field sobriety tests, all of which, in the officer's opinion, the defendant failed.

Later, Officer Bean learned that the defendant's driver's license had been revoked and that he had been issued a restricted license. When asked about this, the defendant admitted that he was not allowed to be driving after 1:00 A.M. The restricted license was for transportation to and from work only.

2

The defendant declined a blood alcohol test. At trial, Officer Bean recalled that the defendant explained that he had not taken his medicine and that he had a physical ailment that made it difficult for him to stand. There was a medicine bottle found in the front seat of the car. Officer Bean remembered that both the vomit and the breath of the defendant smelled of alcohol.

Officer Fann recalled seeing the defendant's car weave back and forth across the yellow and white line before Officer Bean turned on the blue lights and siren. He testified that he observed each of the field sobriety tests. Officer Fann also came to the conclusion that the defendant was too intoxicated to be driving.

The defendant, a security guard at Shaw Industry, testified that he had a restricted driver's license at the time of his arrest which allowed him to drive to and from work. He claimed that his hours varied at his place of employment and that he was under the care of a physician for both depression and epileptic seizures. He explained that he had been prescribed Perphenazine which he was required to take each day for his epilepsy.

The defendant insisted that he had not consumed any alcohol prior to his arrest and had stopped at the Pit Stop only to play pool and drink Coca-Cola. The defendant testified that he became ill and that a patron from Chicago, who was quite intoxicated, tried to assist him but threw up on him and spilled whiskey on him. The defendant stated that he was on his way to his place of employment to find his medicine when he was stopped by the police. He claimed that his seizure had passed before he began to operate his car and that his driving might have appeared erratic because the officers were following too closely behind. He claimed that he began to have another seizure at the time Officer Bean began to administer the field

3

sobriety test.

Defense witness Bill Williams, who arrived at the Pit Stop between 7:00 and 8:00 P.M. prior to the arrest, testified that he did not see the defendant drink alcohol on the night in question. When Williams offered the defendant a drink, the defendant responded, "I can't, Bill, I'm on medication." Williams, who left between 10:30 and 11:00 P.M., recalled that there was a man from Chicago at the Pit Stop who was intoxicated. He testified that the defendant was not under the influence of alcohol when last seen.

After the jury found the defendant guilty of driving under the influence and driving on a revoked license, the state presented documents establishing his prior convictions on each of the offenses. In consequence, the trial judge concluded that the defendant was guilty of driving under the influence, third offense, and driving on a revoked license, second offense.

In this appeal, the defendant complains that driving from a "recreational establishment to his place of employment for the purpose of procuring needed medicine," was "within the scope of his restricted [driver's] license." He insists that there was insufficient evidence of any consumption of alcohol on his part. He claims that the corroborated "story about the man from Illinois who was drunk, irrational, and possessed with a propensity to propel vomit on the helpful and unwary" was an adequate explanation of the incriminating circumstances.

On appeal, however, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the

4

witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). A guilty verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the evidence favorable to the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

Two law enforcement officers were of the opinion that the defendant was intoxicated. Clearly, the defendant was driving his automobile on a revoked license and after the time authorized by his restricted use. The jury chose the accredit the testimony of the prosecution witnesses and reject that of the defense. That was their prerogative. In our view, a rational trier of fact could have found the essential elements of each of the crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e). The evidence of the defendant's guilt more than satisfied the prescribed standard. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979).

The defendant also complains that the sentence was excessive. He argues that the trial court should have imposed the minimum penalty of one hundred twenty days as prescribed by the legislature. We disagree.

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-104, -117, and -302; State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to

an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence. Id. at 393-94. In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Id.

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The governing statute is designed to provide the trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. "The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence." State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

The state established a significant criminal history on the part of the defendant. His violation of the terms of his restricted license indicates an unwillingness to comply with conditions of release. While one of the convictions here was for driving under the influence, third offense, this is actually his fourth such offense over a thirteen-year period. Apprised that the defendant and his wife had medical problems, the trial court imposed the maximum sentence for driving under the influence but ordered the sentence for driving on a revoked license to be

6

concurrently served.  The primary basis for the imposition of a sentence above the minimum for driving under the influence was the defendant's lengthy history of drinking and driving.

In our view, the trial court addressed the appropriate factors in considering the sentence to impose.  The defendant has failed to rebut the presumption of the correctness of the sentence.

The judgment is, therefore, affirmed.

_____
Gary R. Wade, Judge

CONCUR:

_____
William M. Barker, Judge

_____
Curwood Witt, Judge