IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2001

### STATE OF TENNESSEE v. CHARLES ROY COLE

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-174     Roy B. Morgan, Jr., Judge**

_____

**No. W2000-01129-CCA-R3-CD  - Filed May 9, 2001**

_____

The defendant, Charles Roy Cole, was charged with aggravated assault and rape of a child. He was acquitted on the first charge and convicted on the second. The trial court imposed a sentence of 20 years. In this appeal of right, the defendant challenges the sufficiency of the evidence and argues that the trial court erred in its jury instructions regarding admissions against interest. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Charles Roy Cole.

Paul G. Summers, Attorney General & Reporter; Laura E. McMullen, Assistant Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The victim, who was approximately 17 years old at the time of trial, lived with her mother, Paulette Cole, and the defendant, her stepfather. She and her mother had resided with the defendant since she was five months old. The victim had two half-sisters, ages 14 and 15, and a half-brother, age 12. When the victim was 15 years of age, she developed a relationship with Mike Patrick, age 26.

Because the victim admitted to skipping school and using illegal drugs and because they suspected that Patrick was a drug dealer, the victim's mother and stepfather ordered the victim to terminate the relationship. Afterward, the victim became distraught and threatened suicide. On October 6, 1998, she wrote a letter containing the following statements:

I cry so hard. I cry when I'm alone because I love somebody and they took it away . . . . So I'm going to take away from them what they took from me.

On October 26, 1998, almost three weeks after writing the letter, the victim returned home from school and refused to eat. That night, Mr. and Mrs. Cole admitted her to the Pathways Hospital for drug testing. While there, the victim told Jeff Gray, a crisis counselor, that the defendant had raped her some years before.

At trial, the victim provided the details of the incident. She testified that the defendant came to her room on the night of November 13, 1993, her eleventh birthday. She stated that the defendant woke her, directed her to the living room, and then told her to take off her clothes. She testified that the defendant then forced her to have sexual intercourse and, afterwards, threatened to kill her if she told anyone. The victim also testified that the defendant held a knife to her throat and threatened her when he learned that she skipped school to be with another young man.

The victim testified that she had never revealed the incident before talking to Gray. She explained that she was afraid of how her stepfather would react. After talking with Gray, the victim returned to her mother and stepfather. She claimed that her mother overheard the conversation between her, her stepfather, and Gray concerning the rape.

The victim also explained that her parents learned about her relationship with Patrick when she "skipped school one day . . . went over to his house, and . . . didn't come back home until . . . that next morning. . . ." She contended that she went to Pathways to have a drug screen to demonstrate to her mother that she was not using illegal drugs anymore.

During cross-examination, the victim was asked why she had said nothing about the incidents until Mr. and Mrs. Cole had learned of her truancy and directed that her relationship with Patrick be terminated. At that point, the victim answered "No, he hurted me. He had sex with me. He came in my room. When I was five years old, he took me out of my room." There was no contemporaneous objection. During a bench conference, however, defense counsel later inquired whether the victim's answer had been responsive to the question and objected to the state's efforts to examine the victim further. The trial court prohibited further reference, concluding the likely prejudice outweighed any probative value.

Gray testified that he met with the victim and her mother on October 26. He recalled that the victim reported that she had been raped by her stepfather on one occasion and that he had held a knife to her throat on another. Gray stated that he then had a conversation with the defendant in the waiting room in the presence of the victim concerning the victim's accusation of rape. Gray testified that he asked the defendant if it was true, to which the defendant answered, "Yes, I need some help." Gray recalled that he denied ever holding a knife to the victim's throat. Gray then testified that he asked the defendant about the rape on more than one occasion and that each time the defendant answered affirmatively.

Officer Alan Randolph of the Jackson Police Department was dispatched to the hospital to "basically keep an eye" on the defendant. Officer Randolph recalled that the defendant, who appeared distraught, approached him and said, "Hello," "I'm sorry," and "I need some help." The officer recalled that the victim's mother was nearby and was in a position to hear the conversation. Sergeant Randall Blankenship, who was with Officer Randolph, also testified that the defendant made the statement, "I need help."

Rene Pullen, an investigator with Child Protective Services for over a year, also testified for the state. Ms. Pullen, who had a bachelor's degree and some training within the department, opined without objection that sexually abused children often do not report abuse due to fears that they will not be believed, that they will be blamed for the event, or that they will be harmed. She stated that skipping school, running away, and abusing drugs and alcohol "can indicate sexual abuse or any kind of abuse . . . [with the victim] unintentionally hoping that somebody will find out what's really going on." Ms. Pullen stated that it was her opinion that victims of sexual abuse also seek out older people in their relationships. On cross-examination, Pullen was asked if she ever followed up on the victim's claim that she had told her maternal grandmother about the sexual abuse. She acknowledged that she had not because "with everything else we had, [it] wasn't a big issue at that point."

Tabitha Cole, the victim's sister, testified for the defense. She maintained that the victim never informed her of any sexual misconduct on the part of the defendant. Tabitha also testified that after the defendant was charged, the victim claimed that she did not say "all them things that was in the paper and . . . wish[ed] she could take it back." She also stated that the victim was acting "crazy" and "cursing my momma and my daddy a lot" on the night she was taken to the hospital.

Paulette Cole, the victim's mother, testified that the victim had been "acting strange," "mad," and "ready to fight and stuff" just before she was taken to the hospital. Ms. Cole recalled that the victim went to her room and refused to eat. When the victim continued to misbehave, Ms. Cole decided to take her to the emergency room to have her tested for illegal drugs. She testified that a few weeks earlier, the victim had stayed out all night with Patrick and later admitted to "drinking, smoking, and having sex. . . ." She testified that the victim reacted angrily when told that the relationship must be terminated.

Ms. Cole acknowledged that during the examination at the hospital on October 26, 1998, she overheard the allegations made by the victim against the defendant. She stated that the victim had never complained about sexual abuse and that she did not hear noises coming from the living room on November 13, 1993. Ms. Cole testified that just before the hospital visit, the victim began to act strangely. She stated that she searched the victim's room for any clues to explain her behavior, but never found any note or letter wherein the victim had accused the defendant of sexual impropriety. Ms. Cole contended that if there had been indications of misconduct on the part of the defendant, she would have called the police and had him arrested. She stated that she was present when counselor Gray talked to the defendant and that he never stated "Yes, I need help," in response to any inquiry. Ms. Cole conceded, however, that she was not present when Officer Randolph and Sergeant

Blankenship talked with the defendant. She also acknowledged that a day or so after she had taken the victim to the hospital, she found a diary in the victim's room. She stated there was nothing in the diary about the defendant's sexual impropriety.

The defendant denied that he raped and assaulted the victim. He stated that several weeks before his arrest, he told Patrick to leave the victim alone; after that, the victim "just went berserk." He recalled that just prior to taking her to the hospital, the victim looked "high" and was "acting like she . . . wasn't there." He testified that he took the victim to the hospital because he suspected that she was on drugs and later discovered that she had skipped three classes. He stated that the victim was already "in trouble" with the school's truancy board and had missed 14 days of school that fall. The defendant explained that he took the victim to the hospital to determine whether she was "smoking dope" or "hooked on crack cocaine."

While the defendant acknowledged that counselor Gray asked if he had ever engaged in sex with the victim, he denied answering in the affirmative. He also denied having any discussions with Officer Randolph. The defendant testified that he had never had sex with the victim and had never threatened her with a knife. He stated that the victim often threatened suicide when she did not get what she wanted. The defendant acknowledged that he did give the victim extra money, but only because she was in a higher grade than the rest of his children. The defendant, a Vietnam veteran and Sunday School teacher with no prior criminal record, explained on cross-examination that counselor Gray informed him of the victim's statement and was asked if he understood. The defendant contended that he answered, "Yes, I understand. . . ." The defendant also maintained that counselor Gray had taken his words out of context or had misunderstood his statement. The defendant admitted that he said he was sorry but denied that it was in response to the victim's rape and assault allegations. Finally, he denied ever having said, "I need help."

The jury returned a verdict of guilt on the charge of rape of a child. It acquitted the defendant on the aggravated assault charge.

I

Initially, the defendant claims that the evidence was insufficient to support a conviction for rape of a child. He argues that the victim was motivated to lie by her own anger after he and his wife attempted to discipline her for her misbehavior with Patrick. He also contends that he never admitted to raping the victim and that counselor Gray misunderstood his statement. He argues that the statement, "I need help," was not an admission of guilt and had no probative value.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable

to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). A guilty verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in the proof in favor of the state's theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

Rape of a child is defined as follows:

(a) Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age.

(b) Rape of a child is a Class A felony.

(c) When imposing sentence under the provisions of title 40, chapter 35, for a conviction under this section, the court shall consider as an enhancement factor that the defendant caused the victim to be mentally incapacitated or physically helpless by use of a controlled substance.

Tenn. Code Ann. § 39-13-522 (1997).

The victim testified that she was raped by the defendant on her eleventh birthday. The defendant contested the claim, contending that the victim, who waited five years to allege any impropriety, had been motivated to lie by anger over the disciplinary measures imposed upon her. Counselor Gray testified that the defendant answered in the affirmative when asked whether he had had sexual contact with the victim. Gray also testified that the defendant said, "I need some help," when confronted by the allegations of impropriety. Two officers corroborated that the defendant had made such a statement. The testimony offered by the state and that presented by the defense offered a classic jury question.

A jury verdict of guilt, of course, accredits the witnesses for the state and resolves, for appellate purposes, any conflicts in the evidence. In determining the sufficiency of the proof to convict, this court may neither reweigh nor reevaluate the testimony. In this instance, there was proof to support each element of the offense. While recognizing that there was evidence favorable to the defense theory, it is our view that the jury acted within its prerogative in determining that the defendant was guilty. This court may not second guess that conclusion.

II

The defendant did not object when counselor Gray, Officer Randolph, and Sergeant Blankenship testified that he said, "I need help." While he did not present the issue in his motion for new trial, the defendant now argues that the trial court erred when it instructed the jury as to an admission against interest. See Tenn. R. Evid. 803. The instruction was as follows:

-5-

Evidence has been introduced in this trial of a statement or statements made by the defendant outside of trial. Such statements must be corroborated by other independent evidence to warrant and support a conviction.

The court has permitted admission of this evidence, but it remains your duty to decide if, in fact, such statement or statements were ever made. If you do not believe it was ever made, you should not consider it. If you decide any such statement was made, you must then judge the truth of the facts stated. In determining whether the statement is true, you should consider the circumstances under which it was made. You should also consider whether any of the evidence before you tends to contradict the statement in whole or in part. You should not arbitrarily disregard any part of the statement but should consider all of the statement you believe is true.

If you find the statement is true, you are the sole judge of the weight that should be given it. You should consider it along with all of the other evidence in the case in determining the defendant's guilt or innocence.

An admission against interest has been defined as "a statement by the defendant which acknowledges the existence or truth of some fact necessary to be proven to establish the guilt of the defendant or which tends to show the guilt of the defendant or is evidence of some material fact, but not amounting to a confession." State v. Roger Morris Gardner, No. 03C01-9712-CR-00524 (Tenn. Crim. App., at Knoxville, July 13, 1999). The instruction provided is virtually identical to the instruction on admission against interest contained in the Tennessee Pattern Jury Instructions. See T.P.I. - Crim. § 42.11(a) (4th ed. 1995). In Helton v. State, our supreme court defined an admission against interest as "an acknowledgment by the accused of certain facts which tend together with other facts, to establish his guilt; while a confession is an acknowledgment of guilt itself. An admission, then, is something less than a confession and, unlike a confession, . . . an admission is not sufficient in itself to support a conviction." 547 S.W.2d 564, 567; see also State v. Kyger, 787 S.W.2d 13, 23 n.2 (Tenn. Crim. App. 1989).

Gray testified that he asked the defendant whether he "did this" and in response, the defendant either said, "Yes," or nodded in the affirmative and then said, "I need some help." Officer Randolph testified that the defendant, on more than one occasion, said, "I'm sorry," and, "I need some help." Sergeant Blankenship testified that he overheard the defendant, just before he was taken into custody, say, "I need help." It was the responsibility of the jury to determine whether these statements were made, whether they were truthful, and what weight the statements should have been given in determining guilt or innocence. In our view, the instruction was proper. It allowed the jury to consider the surrounding circumstances and determine, in proper context, if the defendant was acknowledging culpability. That was the correct procedure.

In summary, it is our view that the evidence was properly admitted and that the trial court provided appropriate instructions to the jury. Moreover, the defendant's failure to make a contemporaneous objection to the testimony was a waiver on the issue of admissibility and his

failure to challenge the instructions in his motion for new trial would ordinarily result in a waiver of the issue on appeal.  <u>See</u> Tenn. R. App. P. 36(a).

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE