IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2001 Session

## STATE OF TENNESSEE v. LARRY D. UPSHAW

**Direct Appeal from the Criminal Court for Knox County**
**No. 67242     Ray L. Jenkins, Judge**

---

**No. E2000-02262-CCA-R3-CD**
**July 23, 2001**

---

The defendant, Larry D. Upshaw, was convicted of second degree murder. The trial court imposed a sentence of 38 years in the Department of Correction. The sole issue on appeal is whether the evidence was sufficient to support his conviction for second degree murder. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Larry D. Upshaw.

Paul G. Summers, Attorney General & Reporter; Peter M. Coughlan, Assistant Attorney General; and Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the night of September 24, 1998, Officer Chris Bell of the Knoxville Police Department was patrolling the Western Heights Housing Development when he received a call that a stabbing had just occurred in the area. Upon his arrival at the scene, he found that the victim, Leroy Page, had suffered a stab wound to the chest. A neighbor, Billie Asher, held a towel to the victim's stomach area. Officer Bell determined that the victim was alive but unresponsive to questions.

The victim was unconscious when Gary Brent Seymour, a licensed paramedic, arrived at the scene. The heart rate and breathing of the victim were stable at first but deteriorated soon after he was placed on the stretcher. Seymour performed CPR on the victim until the ambulance arrived at the hospital.

Ava Cospy testified that she lived with the victim and that their relationship had extended over a period of five years. She recalled that when she arrived home from work at around 5:00 p.m.

on the evening of the murder, the defendant and the victim were in her kitchen. No one else was in the residence. She left for the grocery store and, upon her return, the two men were still in the kitchen. Ms. Cospy took a nap and when she awoke, the defendant was the only other person in her house. The victim returned and Ms. Cospy left to purchase beer. Upon her return, the defendant and victim were on the front porch. No others were present. About 10 minutes later, Ms. Cospy heard the victim call to her from the porch, saying that he had been stabbed. No one else was on the porch. She then rushed across the street to call for an ambulance.

Billie Asher testified that the victim had introduced her to the defendant earlier in the day. She recalled that after 5:00 p.m. on the night of the murder, she saw no one on the porch with the victim other than the defendant. At one point during the evening, Ms. Asher went to the victim's apartment in order to get a cigarette from Ms. Cospy. Some 15 to 20 minutes later, Ms. Cospy arrived at her door saying that the victim had been stabbed. As Ms. Asher attended to the victim, she asked, "Was the M.F. [that] did this to you sitting on the porch?" The victim responded, "[Y]eah." When she asked whether "the man on the porch [did] this to [him]," the victim "shook his head" affirmatively and soon lost consciousness.[1] Ms. Asher acknowledged that she did not use the defendant's name when she asked the question, explaining that she could not remember it.

Tim Snoderly of the Knoxville Police Department testified that when he investigated the homicide, he found blood on the victim's front porch. A closed pocketknife and a knife handle were in the front yard. Officer Snoderly recalled that when he and other officers arrived at the defendant's residence, the defendant, who was outside, "kept walking" past them. When the officers caught up with the defendant moments later and asked about the incident at the apartment complex, the defendant claimed that he was not there. Officer Snoderly testified that the defendant later admitted to being at the apartment complex, but denied being at the unit occupied by the victim. Officer Snoderly acknowledged that the murder weapon was never located and that no blood was found on the defendant's shoes. He described the victim's apartment as a "drug house," where cocaine was cut and cooked. Officer Snoderly also testified that Robert Kirkendol, who was jogging on the night of the murder, stated that about 45 minutes before police arrived, he saw several individuals on the victim's porch, including at least three males and one female. He also confirmed that Kirkendol had seen two white males running away from the location.

Dr. Sandra Elkins, Knox County Medical Examiner, testified that the victim had a single knife stab wound, which had penetrated the pulmonary artery, to the left area of his chest. She indicated that the stab wound was 3.6 inches in depth and that the victim would have lost consciousness "within a matter of minutes" after sustaining the wound. It was Dr. Elkins' opinion that one having a wound of that nature could talk coherently until losing consciousness. On cross-examination, Dr. Elkins acknowledged that there was nothing to indicate that the knife used to stab the victim had a serrated edge. She confirmed that blood drawn during the autopsy tested positive for cocaine.

---

[1]The context of the testimony suggests that when the victim "shook his head," it was an affirmative response.

Roberta Jean Upshaw, the defendant's sister, claimed that the defendant was at the home they shared at 9:00 p.m. on the night of the murder. She testified that the defendant came inside for a few minutes before leaving to go to the store.

The defendant did not testify.

On rebuttal by the state, Officer Snoderly testified that Ms. Upshaw never mentioned that she saw the defendant at 9:00 p.m. on the night of the murder. He recalled her saying that the defendant returned to their residence at 11:30 p.m.

The defendant argues that the evidence was insufficient to support a conviction for second degree murder. He claims that the conviction was based entirely on circumstantial evidence. In particular, he maintains that the circumstantial evidence did not "exclude every other reasonable theory or hypothesis except that of guilt," and did not establish beyond a reasonable doubt that he committed the crime.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). A guilty verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in the proof in favor of the state's theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

A person commits the crime of second degree murder if he knowingly kills another. See Tenn. Code Ann. § 39-13-210. Here, Ms. Asher testified that she saw no one on the victim's porch on the night of the murder except the defendant from "five o'clock on." While she could not remember his name, Ms. Asher had been introduced to the defendant. After the defendant was stabbed, Ms. Asher, who was aware that the victim and the defendant had previously been together, asked the victim if the person sitting with him on the porch had committed the stabbing. The victim answered, "[Y]eah." He then confirmed the identification by shaking his head in an affirmative manner when Ms. Asher asked, "Did the man on the porch do this to you?" Officer Snoderly said the defendant attempted to "walk away" from him and other officers when they arrived at his residence. Initially, the defendant denied that he had been at the apartment complex when the stabbing took place, but he later admitted that he had been at an apartment near that of the victim. Ms. Cospy left the defendant and the victim together on the porch when she entered the residence. No one else was present. Only 10 minutes later, she heard the victim calling to her that he had been stabbed.

The defendant contends that this evidence does not "unerringly point the finger of guilt" because others were seen on the victim's front porch shortly before the crime was committed. He argues that any of the victim's "drug customers" may have killed him. It was the function of the jury to reconcile any conflicting testimony and to weigh the value of circumstantial evidence. That the victim, just before his death, was able to identify his assailant is particularly compelling testimony. It is well established that the identification of a defendant as the person who committed the offense for which he is on trial is a factual issue to be determined by the jury. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). The testimony of a witness identifying the perpetrator is sufficient in and of itself to support a conviction. Id. at 87-88. In our view, the evidence was sufficient.

_____
GARY R. WADE, PRESIDING JUDGE