IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1997 SESSION

FILED

January 8, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9610-CC-00440 |
| Appellee, | * | HICKMAN COUNTY |
| VS. | * | Hon. Henry Denmark Bell, Judge |
| STANLEY H. BAKER, | * | (DUI, Third Offense, and |
| Appellant. | * | Driving on a Revoked License) |

For Appellant:

Elaine B. Beeler
Assistant Public Defender
P.O. Box 68
Franklin, TN  37065-0068

For Appellee:

Charles W. Burson
Attorney General and Reporter

Daryl J. Brand
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN  37243-0493

Ronald L. Davis
Assistant District Attorney General
P.O. Box 937
Franklin, TN  37065-0937

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

OPINION

The defendant, Stanley H. Baker, was convicted of driving under the influence of an intoxicant, third offense, and driving on a revoked license. Tenn. Code Ann. §§ 55-10-401 and 55-50-504. The trial court imposed concurrent sentences of eleven months and twenty-nine days for the DUI, third offense, and six months for driving on a revoked license; all but one hundred twenty days were suspended on each conviction. At the time of the offenses, the defendant was serving an eleven-month and twenty-nine-day sentence on a 1994 DUI conviction. The trial court revoked probation and required a thirty-five day consecutive sentence before reinstatement of the probationary term.

In this appeal of right, the defendant challenges the sufficiency of the evidence. The state insists that the trial court erred by granting probation on the DUI third offense conviction and by ordering reinstatement of probation on the 1994 DUI conviction after the service of an additional jail term. We affirm the judgment of the trial court.

At about 9:15 P.M. on June 25, 1995, State Trooper Kent Montgomery was dispatched to the scene of a one vehicle accident on Highway 46 in Hickman County near the Bon Aqua Post Office. Deputy Darrell Jackson was already at the scene when the trooper arrived. At trial, Trooper Montgomery testified that the defendant identified himself as the driver of the vehicle. The defendant, who produced a restricted driver's license that permitted his operation of the vehicle only for purposes of work, acknowledged to the trooper that his driving on that date was not work-related.

Trooper Montgomery testified that the defendant's eyes were "glassy

2

and bloodshot," that he smelled of alcohol, and that he was unsteady on his feet. He recalled that the defendant admitted drinking five to six beers. The defendant was unable to walk properly or stand on one foot. The trooper described the defendant as "extremely intoxicated." The automobile was registered to the defendant; he refused to take a blood-alcohol examination.

Deputy Jackson testified that both Charles Harrington, an occupant in the wrecked vehicle, and the defendant were intoxicated. He described each as having slurred speech and smelling like alcohol. Called as a rebuttal witness at the end of the defense proof, Deputy Jackson recalled that the defendant admitted at the scene that he was driving the vehicle at the time of the accident. He remembered that neither Harrington nor the defendant claimed that a third person had been driving the vehicle.

During his testimony at trial, the defendant admitted that he was drunk on the night of the accident. He insisted that a man named Hawkins, who was a friend of Charles Harrington's, had been the driver of the vehicle on the night of the accident. He claimed that Hawkins had died prior to trial and was unavailable to testify. The defendant explained that he never indicated to either of the officers that a third person was driving because no one had asked.

Charles Harrington also testified that his friend, Johnny Hawkins, had been the driver of the vehicle on the night of the accident. He contended that the officers asked only who owned the car. He claimed that neither officer had asked who was driving.

On appeal, the state is entitled to the strongest legitimate view of the

3

evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the prosecution. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). This court may not re-evaluate the proof or substitute its inferences for those drawn by the trier of fact. Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). A conviction may only be set aside when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13 (e).

In this case, the jury chose to accredit the testimony of the prosecution witnesses. The issue of whether the defendant was driving the vehicle at the time of the accident was resolved favorably to the state. There was ample evidence to support that conclusion. Thus, there was sufficient evidence to support each of the verdicts. In our view, a rational trier of fact could have found the essential elements of the crime. The evidence satisfies the standard prescribed by law. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 195 (1979).

In its separate appeal, the state complains that the trial court sentenced the defendant to the minimum required term for DUI, third offense, and should not have reinstated probation for the 1994 DUI offense. The state argues that the orders of split confinement with the inclusion of partial probation did not conform to the principles, purposes, or goals of the Criminal Sentencing Reform Act of 1989. The state contends that the defendant has been treated with leniency

4

insofar as his prior criminal convictions and that because he has a "previous history of unwillingness to comply with the conditions of a sentence involving release in the community," this court should deal with the defendant more severely. Tenn. Code Ann. § 40-35-114(8).

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The state may appeal the sentence when the trial court grants "all or part of the sentence on probation." Tenn. Code Ann. § 40-35-402(b)(2).

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210.

Among the factors applicable to the defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable

5

opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-104, -117, and -302; State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence. Palmer, 902 S.W.2d at 393-94. In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Id.

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The governing statute is designed to provide the trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994); Tenn. Code Ann. § 40-35-210.

There was not a separate sentencing hearing in this case. When the jury returned its verdict of guilt, the defendant conceded that his conviction of driving

6

under the influence qualified as a third offense, so additional deliberations were unnecessary. The record indicates that the defendant's first DUI conviction was in 1987 and the second in 1994. The state and the defendant had entered a plea agreement on the 1994 DUI by which he was sentenced as a first offender to eleven months and twenty-nine days with all but ten days suspended. In the instant case, the state declined the opportunity for a presentence investigation and waived opening argument as to the sentence. Defense counsel pointed out that the defendant had paid his fine and costs for the 1994 DUI and had been released from his prior jail sentence some six months prior to this incident. She argued that the defendant was entitled to leniency because he had avoided further criminal violations during the one-year delay until his trial. The state countered that the defendant had lied in court about the incident and should be punished accordingly. The state had no objections to the defendant's request for a two week delay before reporting to jail so he could tend to a medical problem. The trial court described the probation violation as "a very serious one." It imposed an $1,100 fine on the DUI third offense and refused to suspend an additional $150 fine for driving on a revoked license. The trial court precluded the defendant from having an operator's license for three years and required him to undergo treatment for alcoholism. The jail term imposed totaled 155 days.

As pointed out by the state, the trial court failed to make references to the principles and purposes of the Criminal Sentencing Reform Act of 1989. It is the duty of the trial court to state why the sentence is the least severe measure necessary and deserved under the Act. See Tenn. Code Ann. §§ 40-35-102 and -103. The record here, however, is not as well developed on the sentencing issue as in those instances wherein this court has chosen to increase jail time for driving under the influence; a greater amount of information was available, for instance, in

7

State v. Seaton, 914 S.W.2d 129 (Tenn. Crim. App. 1995).  It is always incumbent upon the appealing party to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal.  Tenn. R. App. P. 24(b).  Because the sentencing issue was so peremptorily addressed at the conclusion of the trial, it is understandable that the record here is less than desirable for this court to consider a substitution of its opinion for that of the trial court.  Instead, we defer to the judgment of the trial court.  In the absence of a record containing a presentence report or a more complete statement of all of the relevant factors surrounding the fixing of sentences, we must presume both the correctness of the sentences imposed and the manner of the service.  See State v. Beech, 744 S.W.2d 585, 588 (Tenn. Crim. App. 1987).

Accordingly, the judgment is affirmed in all respects.

_____
Gary R. Wade, Judge

CONCUR:


_____
Thomas T. Woodall, Judge


_____
Curwood Witt, Judge

8