IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 21, 2024

**STATE OF TENNESSEE v. TORY KEITH MOTE**

**Appeal from the Circuit Court for Montgomery County
No. 63CC1-2022-CR-807  Robert Bateman, Judge**

_____

**No. M2023-00959-CCA-R3-CD**

_____

Tory Keith Mote, Defendant, appeals his convictions for aggravated assault, domestic assault, and interference with a 911 call after a bench trial. On appeal, Defendant argues that the evidence was insufficient to support the conviction for aggravated assault. Because the evidence was sufficient, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Mitchell A. Raines, Assistant Public Defender – Appellate Division (on appeal); Roger Nell, District Public Defender, Joseph Price, Assistant Public Defender (at trial), for the appellant, Tory Keith Mote.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Robert J. Nash, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Ashlee Tenk, the victim, had known Defendant for "[a]bout a year" on February 12, 2022. At the time, she lived in a home in Clarksville. She and Defendant were "dating," and Defendant stayed with her "on and off." The couple also worked together—the victim as the manager and Defendant as one of the cooks at a local restaurant. She started her shift at 8:00 p.m. on February 11. In the early morning of February 12, at around 3:00 a.m., they finished work and "had a couple of beers." They drank one beer at the restaurant

before going to "Night Deposit." After leaving Night Deposit, they went to Rudy's Diner. They did not consume any alcohol at Rudy's Diner. The couple was "bickering" all night.

The couple eventually arrived home from work at around 7:00 a.m. Defendant got in the shower and locked the bathroom door, something he "didn't usually" do. The victim described Defendant as "irritable" before he got in the shower and "asked him why he locked the door because [she] had to use the bathroom." Defendant called the victim a "lying bitch" and claimed that he did not lock the door.

At that point, Defendant got out of the shower and got dressed. She described his behavior as "aggressive and yelling." Defendant "ripped the [bathroom] door off the hinges" and threw it in her direction, telling her the door would not "be a problem." The door hit her foot. Defendant "went crazy" and started "yelling and screaming" and "put[ting] his hands" on the victim. She "tried to run out of the bedroom," but Defendant grabbed her wrist and threw her onto the bed. Defendant "hit" or "punched" her in the face and busted her lip. She managed to get away and "went out into the living room." At some point, the victim tried to call 911, but Defendant took her phone.

Once the victim got into the living room, Defendant "stomped on her foot" and "pushed [her] down onto the futon." The stomp fractured two toes on her foot. Once Defendant pushed her down onto the futon, he told her she "could not leave." There were objects all over the futon, including an open container of orange juice, a red hoodie, and two blankets. Defendant held the victim down by placing his knees on her elbows. Defendant choked the victim by wrapping "a blanket around [her] neck." The blanket was "over [her] neck kind of and then [Defendant placed] his hands around [her] neck." She felt a "tremendous amount of force" from the pressure of Defendant's hands on her neck and found it difficult to breathe. Defendant's hands were "wrapped tightly" around her neck. The victim did not pass out but was unable to get up from the futon. The episode felt like it lasted "forever." Defendant told her she "[w]as not leaving the house and that he was going [to] tie [her] up in the bedroom if he had to and leave [her] for [her] daughter to find [her]." At some point, Defendant told her he would "kill" her and that she "didn't know who he was and what he was capable of."

The victim was "scared" and "numb." She was "scared that he was actually going to act on the actions and that [her] daughter would be left without [her]." The victim "begged" Defendant to stop. She offered him her phone, keys, and car and told him that she would let him get away if he just left. Defendant finally left, taking her car. The victim "laid there for a minute so that [she] knew that he was gone," and ran to her neighbor's house and "banged" on the door.

The police arrived pretty quickly after she called 911. When they arrived, the victim did not know the location of Defendant, but she noticed while she was on the phone with dispatch "the car was back in the driveway." The victim had blood on her shirt and her pants were wet, probably from the orange juice on the futon.

Sergeant Heather Hill of the Clarksville Police Department responded to the call from the victim. She arrived about five minutes after the call and was on the scene at 9:35 a.m. She contacted the victim, who was "very scared, nervous, frantic, [and] shaken up." The victim recalled that Sergeant Hill asked her to write a statement. She told the officer that she "needed a minute" to "catch her breath." The victim "gave a verbal" statement but did not finish a written statement. Sergeant Hill noted on the form that the victim was "too sh[aken] up to write a statement."

Sergeant Hill took photos of the victim. She could not recall what time she took the photos. Sergeant Hill reported that Sergeant Stephen Hurt and Officer Adam Price also responded to the call. Officers found the victim's phone under the porch of the house. Officers found Defendant about an hour later walking on the road in a nearby business park. Defendant was "deemed the primary aggressor" and placed into custody based on the victim's statements and her injuries.

A grand jury indicted Defendant on one count of aggravated assault, one count of domestic assault, and one count of interference with an emergency call. He waived his right to a jury trial.

At the bench trial, in addition to the proof recounted above, Sergeant Hill explained that there was a "Bond Release Notification" request in a domestic assault situation where officers notified the victim of all the conditions of release. The notification was attached to the warrant but was unsigned by the victim. Sergeant Hill "filled it out for her" because she was "shaken up." Sergeant Hill testified that the form was prepared "[i]n front of the magistrate" but agreed that body cam footage showed the form was prepared at the victim's home. Sergeant Hill testified that ordinarily if the form states "'unable to sign,' it's because they are not filled out" in front of the victim. Sergeant Hill identified her "report" about the incident and agreed that the victim testified at trial to things that were not in the report's narrative.

Defendant did not present any proof. At the conclusion of the bench trial, the trial court found that the "proof is beyond a reasonable doubt that there was physical injury to the victim, and based on the victim's testimony, . . . that she was in fear of imminent bodily injury, so an assault has occurred." The trial court found that Defendant and the victim lived together and were dating or had dated, determining that the evidence supported a conviction for domestic assault. Finally, the trial court found "that a strangulation occurred

as defined by the statute," supporting the conviction for aggravated assault. Finally, the trial court found that Defendant "knowingly prevent[ed] the victim from placing a telephone call to 911."

At a sentencing hearing, the trial court sentenced Defendant to five years for aggravated assault and eleven months and twenty-nine days each for domestic assault and interference with an emergency call. The trial court ordered the sentences to run concurrently for a total effective sentence of five years. The trial court denied alternative sentencing, ordering Defendant to serve the sentence in confinement.

Defendant filed a motion for new trial, in which he argued that the evidence was insufficient. The trial court denied the motion, and Defendant appealed.

*Analysis*

On appeal, Defendant argues that the evidence is insufficient to support the conviction for aggravated assault. Specifically, he argues that there is not sufficient physical proof in the record to support the narrative that the victim was "strangled or that [Defendant] attempted to strangle her." Defendant does not challenge his other convictions. The State argues that the trial court, as fact finder, judged the credibility of the witnesses and that the victim's testimony coupled with the physical evidence supports the conviction, despite the absence of bruising or abrasions on the victim's neck.

When examining whether the evidence presented at trial was sufficient to support a conviction, several well-settled principles guide our analysis. We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The defendant bears the burden on appeal to demonstrate that the evidence is insufficient to support his conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (citing *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978)). The judge evaluates the credibility of the witnesses, determines the weight to be given to witnesses' testimony, and reconciles all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the judge determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and

- 4 -

inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This Court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the [judge]." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (citing *Bland*, 958 S.W.2d at 659).

As relevant to this case, an assault is committed when a person knowingly "causes bodily injury to another." T.C.A. § 39-13-101(a)(1). Aggravated assault is the assault of another involving "strangulation or attempted strangulation." *Id.* § 39-13-102(a)(1)(A)(iv). "Strangulation" means:

> intentionally or knowingly impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person, *regardless of whether that conduct results in any visible injury* or whether the person has any intent to kill or protractedly injure the victim.

*Id.* § 39-13-102(a)(2) (emphasis added).

Viewed in the light most favorable to the State, the proof shows that Defendant pushed the victim onto a futon, "wrapped a blanket around [her] neck," and applied a "tremendous" amount of force to her neck with his hands as he pinned her arms down with his elbows. The victim testified that Defendant threatened to kill her and that she was scared that she might die. Sergeant Hill likewise testified that the victim was very shaken up after the incident, so much so that she was unable to complete a written narrative. The physical testimony in the form of photographs supported the victim's testimony. The futon was topped with a blanket and an open orange juice container, as the victim described. The bathroom door was on the bedroom floor. Although the photos of the victim's neck do not show bruising, the injuries to her lip and foot are visible in the pictures and consistent not only with her testimony at trial but also with the information she relayed to officers at the scene. The evidence is sufficient to support a conviction for aggravated assault. Defendant is not entitled to relief.

_____
TIMOTHY L. EASTER, JUDGE

- 5 -