IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 7, 2008

## STATE OF TENNESSEE v. ZANDY ORLANDO NELSON
a/k/a VANDY A. NELSON

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-709     Mark J. Fishburn, Judge**

_____

**No. M2007-02645-CCA-R3-CD - Filed March 19, 2009**

_____

The defendant, Zandy Orlando Nelson a/k/a Vandy A. Nelson, appeals as of right his Davidson County Criminal Court conviction of aggravated assault for which he received a sentence of eleven years as a persistent offender, consecutive to a previously imposed sentence. He argues that the evidence is insufficient to support his conviction and that the trial court erred in denying a motion for continuance when the State filed a notice to seek enhanced punishment on the day of trial. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Charles E. Walker (at trial) and J. Chase Gober (at Motion for New Trial and Appeal), Nashville, Tennessee, attorneys for appellant, Zandy Orlando Nelson a/k/a Vandy A. Nelson.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sarah Davis, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

The defendant's conviction of aggravated assault arises from an attack on his former girlfriend, Tiffany Johnson-Jordan, who was five months pregnant with his child at the time of the assault. At the defendant's bench trial, Ms. Johnson-Jordan testified that she and the defendant began dating in May 2005, had an "on again/off again" relationship, but were separated on November 23, 2005. On that day she was visiting her best friend, Shante McMurray, when they saw the defendant while out at the store. Later that evening, the defendant telephoned Ms. McMurray's home to speak with the victim. Within minutes of the phone call, Ms. McMurray answered a knock

on her door, and the defendant walked past her to the kitchen where the victim was making Kool-Aid.

The victim testified that her back was to the defendant as he entered the kitchen. She recalled that he asked her "what the 'f' was I doing over there" and that, before she could say anything, the defendant struck her with his closed fist on the left side of her face. As he hit her, the pregnant victim fell to the floor, and he kicked her on her rib cage. The victim testified that she immediately felt a gush of fluid and feared for the safety of her baby so she did not get up from the floor despite the defendant's demands that she leave with him. As she sat on the floor, the defendant grabbed a kitchen knife from the counter and threatened to kill her if she did not get up from the floor. The victim stated that she was fearful throughout the attack but especially afraid for the safety of her unborn baby. At one point during the attack, the defendant grabbed the victim by her left leg and tried to drag her from the residence. Eventually, the victim was able to go upstairs under the pretense of getting dry clothes while Ms. McMurray telephoned the police. The victim became nauseated and began vomiting in the upstairs bathroom while the defendant waited outside the bathroom door. The police arrived to find the victim still in the bathroom and the defendant waiting for her.

The victim was transported to Vanderbilt Hospital and treated for her injuries. The baby was born a few months later without complications. On cross-examination, the victim admitted that she had written to the defendant while he was in prison but denied ever visiting the defendant. She explained that she thought about staying with the defendant for a while because they had a child together. She reiterated that even statements in her letters did not minimize or differ from her report and testimony about the assault. The victim stated that she felt safe as long as the defendant was in prison.

Ms. McMurray testified consistently with the victim's testimony regarding the assault. She stated that her sister, Renita, was upstairs when the defendant arrived and that Renita came downstairs to tell him to put the knife down. The defendant threw a chair at Renita so she ran back upstairs. Ms. McMurray testified that the victim told her not to leave her because she was afraid the defendant would kill her. She also recalled the defendant telling the victim, "Bitch, I will kill you in here."

Metropolitan Nashville Police Officer Scott M. Henderson testified that he responded to the call at Ms. McMurray's residence to find the victim upset and crying. He testified that there was redness and swelling around her nose and face and that she was complaining of abdominal pain. While taking the report, Officer Henderson saw the kitchen knife; when asked about the knife, the victim reported that the defendant had held it to her neck during the assault. Officer Henderson testified that there were no signs of drug use at the residence.

The defendant testified that he and the victim were living together in November 2005. He stated that the victim called his residence, and when he returned the call, he realized the victim was at Ms. McMurray's home. The victim told him that she would be home soon. When she did not return to his residence, he "took it upon [him]self to go over there and see why – why she was still

over there . . . because Ms. McMurray lives [in] a high crime area – drugs and all of that." The defendant claimed that he arrived to find two men at the residence with Ms. McMurray and the victim. He told the victim she could have her friends. At some point during the argument, the victim spilled the container of Kool-Aid in the kitchen. As the defendant attempted to leave, the victim grabbed his sweater and he "snatched away" from her. He turned to see her sitting on the floor.

The defendant claimed that he was going to take the victim to the hospital and was helping her get cleaned up in the bathroom when the police arrived. The defendant denied any knowledge of a knife. He stated that he smelled marijuana when he arrived at Ms. McMurray's home and knew they were doing drugs. The defendant denied dragging the victim from the kitchen but stated that he did pick her up to take her to the hospital. He claimed the redness on the victim's face came from wiping her face with a towel after vomiting.

Metropolitan Nashville Police Officer Byron Carter testified that he arrived at the scene and that Ms. McMurray told him that her friend had been beaten up by her boyfriend. He stated that the victim initially did not tell him about a knife but that, after the defendant was taken into custody and the victim calmed down, she told the other officer about the knife while giving him the report. He stated that the victim was more concerned about the possibility that she was having a miscarriage when he first arrived at the scene. Officer Carter stated that there were no males at the scene except for the defendant. He also stated that the defendant never told him that the victim grabbed him but only stated that he had not touched her.

The State recalled the victim who testified that if she had not told the first officer about the knife it was because she was still getting cleaned up and calming down when he arrived at the scene. She stated that she just "gave him the basics" about the incident.

ANALYSIS

*Sufficiency of the Evidence*

The defendant contends that the evidence is insufficient to support his conviction for aggravated assault with a deadly weapon. Essentially, he claims that there is no evidence that the defendant threatened the victim with a knife. He contends that authorities did not confiscate the alleged weapon because it was not reported to them at the scene of the assault. He further asserts that the defendant was initially charged with domestic assault as further proof that a knife was not involved in the offense. The state contends that the testimony of both the victim and an eyewitness was more than sufficient to establish the offense of aggravated assault with a deadly weapon. Following our review, we agree with the State.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

-3-

a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Similarly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The offense of aggravated assault, as indicted in this case, requires proof beyond a reasonable doubt that the defendant intentionally or knowingly caused the victim to reasonably fear imminent bodily injury through the use or display of a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(A). The pregnant victim testified that the defendant struck her in the face with his closed fist and kicked her on her side as she fell to the floor. He then grabbed a kitchen knife and brandished it toward her while threatening to kill her. He also attempted to drag the victim from the residence. The victim testified that she feared that the defendant would kill her. The witness, Shante McMurray, corroborated these events through her testimony. Based upon this evidence, we conclude that the evidence is sufficient to support the defendant's conviction for aggravated assault.

*Failure to Grant a Continuance*

The defendant also argues that the trial court should have continued the bench trial when the State filed its notice to seek enhanced punishment on the day of trial. The State argues on appeal that the defendant has waived this issue for failing to request a continuance or allege this issue in the motion for new trial. Following our review, we deny the defendant relief as to this issue.

Rule 12.3(a) of the Tennessee Rules of Criminal Procedure provides that when "the district attorney general intends to seek an enhanced punishment as a multiple, persistent, or career offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial." When the notice to seek increased sentence is filed untimely, the rule provides that "the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial." Id. Our review of the record reveals that the defendant failed to move for a continuance, either orally or in writing. Furthermore, the defendant failed to raise this allegation in his motion for new trial. Accordingly, we conclude that this issue is waived by the defendant's failure to request a continuance or to

preserve it for appellate review by raising it in his motion for new trial.  Tenn. R. App. P. 3(e), 36(a).  The defendant is not entitled to relief regarding this issue.

## CONCLUSION

Upon full consideration of the record and arguments of counsel, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE