IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2014

## STATE OF TENNESSEE v. RICHARD GRIFFIS

**Appeal from the Circuit Court for Madison County**
**No. 13-159     Roy B. Morgan, Jr., Judge**

_____

**No. W2013-02261-CCA-R3-CD  - Filed August 27, 2014**

_____

The Defendant-Appellant, Richard Griffis, was convicted by a Madison County jury of theft of property valued at $1,000 or more but less than $10,000, a Class D felony.  See T.C.A. §§ 39-14-103, -105 (2012).  The trial court sentenced him as a Range I, standard offender to four years' incarceration, suspended to supervised probation.  The sole issue presented for our review is whether the evidence is sufficient to support the conviction.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined.  JEFFREY S. BIVINS, J., Not Participating.

Lee R. Sparks, Jackson, Tennessee, for the Defendant-Appellant, Richard Griffis.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case arises from the theft of a green Honda four-wheeler belonging to Richard Cooke on September 18, 2012. The Defendant-Appellant, Richard Griffis, was subsequently indicted by the Madison County Grand Jury for one count of theft of property valued at $1,000 or more but less than $10,000, a Class D felony.  See T.C.A. §§ 39-14-103, -105 (2012).  The following proof was adduced at trial.

**Trial.** Allen Arnold testified that he was on probation for theft and that he was arrested in September 2012 while riding a stolen four-wheeler.  After his arrest, Arnold

provided information to investigators from the Madison County Sheriff's Department regarding the circumstances of his four-wheeler purchase. He stated that Jamarius "G Baby" Greer offered to sell him a four-wheeler in rough condition for $150. He went to the Defendant's house to purchase the vehicle, though he did not previously know the Defendant. Upon arriving at the Defendant's house, he observed three or four four-wheelers in the garage. He stated that both the Defendant and Greer were "trying to sell all the four-wheelers in the garage." Specifically, the Defendant tried to sell him "a newer four-wheeler" that had special features and decals for $350. Both the Defendant and Greer told him that the vehicle was "hot." Arnold took this to mean that the newer, green four-wheeler was stolen and that "people [were] looking for it." He testified that the Defendant told him that the vehicle "was right down the road from where it was stolen" and that the Defendant "'didn't want to mess with it 'cause it was too hot.'" Arnold declined to buy the newer four-wheeler because he did not want the trouble and because he believed the vehicle was worth more than $350. He purchased the smaller four-wheeler that "supposedly wasn't stolen" and "that looked the worst out of all of them." He said that $150 was "a normal price" due to the condition of the vehicle, but then he discovered that it was also stolen. He stated that he did not receive any benefits from providing this information to the Sheriff's Department and that these events occurred in Madison County.

On cross-examination, Arnold testified that Greer first told him that the bigger four-wheeler was "hot" but that the Defendant told him the same thing that day. He said that the day after he went to the Defendant's house, both the Defendant and Greer sent him text messages trying to sell the same four-wheeler. He stated that the vehicle that he did purchase turned out to be stolen and that he was on probation for theft "to get it over with[.]"

On redirect examination, Arnold read a portion of his prior statement to the Jackson Police Department: "[The Defendant] tried to sell me a green four-wheeler. [The Defendant] told me that the green four-wheeler was hot, and I told [the Defendant] that I did not want to buy the green four-wheeler because it was hot."

Officer Lee Jones of the Jackson Police Department testified that on September 18, 2012, he responded to a report of a stolen four-wheeler at the home of Richard Cooke. He observed a large hole cut into the chain link fence on the property. Officer Jones recorded the vehicle identification number (VIN) of the missing four-wheeler in his police report.

Dewayne McClain of the Jackson Police Department investigated the theft of Cooke's green four-wheeler in September 2012. He testified that after receiving Allen Arnold's statements from the Madison County Sheriff's Department, he went to the Defendant's house on October 7, 2012 to locate the missing four-wheeler. Investigator McClain advised the

Defendant that the police received information of a four-wheeler in his shed, and the Defendant responded that there was a four-wheeler. The Defendant consented to a search of his shed, and Investigator McClain found a four-wheeler that matched Arnold's description. The Defendant advised Investigator McClain that he owned the other four-wheeler in the shed. The police confirmed that the VIN of the green four-wheeler matched that of the vehicle stolen from Richard Cooke. Investigator McClain said that he called Cooke to the scene and that Cooke positively identified the four-wheeler as his own. He stated that Cooke then left the scene with his four-wheeler.

On cross-examination, Investigator McClain acknowledged that the Defendant was cooperative and had consented to the search. He observed some tools and parts in the shed but could not determine that anything was stolen other than the green four-wheeler. He said that the Defendant had provided him with the names of Adam Pruitt and Jamarius Greer, but he was unable to locate these individuals to investigate them.

Richard Cooke of Jackson, Tennessee discovered that his green Honda Rancher was missing from his backyard on September 18, 2012. He noticed that someone had cut a hole in his fence and that there were tracks showing that the four-wheeler "had been rolled through[.]" He reported the theft to the police and provided his title and VIN information. Cooke had purchased the brand new four-wheeler in 2004 for over $5,000 and then customized the wheels and seat covers. He obtained an estimate of the vehicle after the theft and said that it was valued at $3,500 or more.

On October 7, 2012, the police called Cooke and instructed him to go to the Defendant's residence. He met with Investigator McClain at the property and verified that the four-wheeler in the shed belonged to him. Cooke took possession of the vehicle and noticed that it was damaged. He acknowledged that although his four-wheeler was found on the Defendant's property, he did not know who actually stole the vehicle.

After the State's proof, the Defendant testified on his own behalf. He said that he owned a red four-wheeler which he stored in his shed. He stated that in September 2012, Jamarius Greer and Adam Pruitt brought their four-wheelers to store in his shed. Specifically, he said that Greer brought a blue four-wheeler and Pruitt brought a green one. According to the Defendant, Greer and Pruitt had keys to the vehicles and there were no indications that the four-wheelers were stolen. He asked the men if the four-wheelers were stolen, and they responded that they owned the property. He said that Greer and Pruitt brought the vehicles to his shed because he could do mechanic work for them and because there was an area nearby that was popular for riding four-wheelers. The Defendant stated that the men frequently used the vehicles while storing them in his shed. He denied participating in the sale of the blue four-wheeler to Allen Arnold or receiving any proceeds.

However, he did attempt to sell his own red four-wheeler to Arnold. He said that he did not try to sell the green four-wheeler because it belonged to Pruitt. The Defendant denied having any contact with Arnold after that day.

The Defendant testified that on October 7, 2012, Investigator McClain contacted him and that he cooperated with the investigation. He told the police, "If there's a stolen four-wheeler in there, get it out of here." After Investigator McClain found the green four-wheeler, the Defendant explained that Greer and Pruitt brought the vehicle to his property. He denied having any knowledge that the green four-wheeler was stolen.

On cross-examination, the Defendant said that he was the only one who had a key to his shed. He stated that Greer lived down the street from him at the time. He did not think it was unusual that Greer asked him to store the four-wheeler because Greer did not have a garage. He did not find it strange that Greer and Pruitt each brought a four-wheeler to store at his property. He denied asking them if the four-wheelers were stolen. When confronted with his statement to Investigator McClain, the Defendant acknowledged that he did ask if the four-wheelers were stolen, and the response was "no." He testified that he would ask anyone who brought mechanical work if the property was stolen. He denied having a suspicion that the four-wheelers were stolen, but he could not explain why he would ask if the property had been stolen. He stated that he "was joking and kidding with them."

The defense recalled Investigator McClain, who testified that he searched the Defendant's cell phone and did not find any text messages between Arnold and the Defendant. He did not know whether any messages may have been deleted.

Based on the above proof, the jury found the Defendant guilty as charged of theft of property. After a sentencing hearing, the trial court imposed a four-year sentence, suspended to supervised probation. After the denial of his motion for new trial, this timely appeal followed.

## ANALYSIS

**I. Sufficiency of the Evidence.** On appeal, the Defendant argues that the evidence is insufficient to sustain his conviction for theft because the State failed to establish that he knew the four-wheeler was stolen. The State responds that there was ample evidence at trial to support the jury's verdict. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

Here, the Defendant was convicted of theft of a green Honda four-wheeler belonging to Richard Cooke. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). "'Knowing' means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. § 39-11-106(a)(20). Theft of property valued at $1,000 or more but less than $10,000 is a Class D felony. Id. § 39-14-105(a)(3).

As charged to the jury and as defined by the Tennessee Pattern Jury Instructions, "exercise control over property" is:

> . . . the right to direct how property, real or personal, shall be used or disposed. Generally, one must possess the right of possession in property in order to exercise control over it. Such possession may be actual or constructive, sole or joint. Also, one may have the right to control property without having a possessory interest. In such instances, if the defendant takes some action with the intent to deprive the owner of the property, and the defendant did so knowingly and without the owner's effective consent, the jury would be justified in returning a verdict of guilty. Anyone who is in a position to take some action that deprives the owner of property is in a position to exercise control.

See T.P.I.-Crim. 11.01. Moreover, the jury was instructed that it could reasonably infer that a defendant knew that property had been stolen if it found beyond a reasonable doubt that the property in question had recently been stolen and soon thereafter, was discovered in the exclusive possession of the defendant without a satisfactory explanation. See id. 42.20; see also State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (theft may be inferred from the mere possession of recently stolen goods); State v. Hatchett, 560 S.W.2d 627, 629 (Tenn. 1987).

Viewed in the light most favorable to the State, the proof at trial established that on September 18, 2012, Richard Cooke reported that his green Honda Rancher, valued at $3,500, was stolen from his backyard in Jackson, Tennessee. Thereafter, on October 7, 2012, the police and Cooke verified that the green four-wheeler locked in a shed on the Defendant's property belonged to Cooke. Prior to that date, Allen Arnold said that he went to the Defendant's house and purchased a blue four-wheeler. He observed at least three vehicles on the Defendant's property. He testified that Jamarius Greer and the Defendant had also offered to sell a newer, green four-wheeler to him which they both described as "hot." The Defendant told Arnold that the green vehicle "was right down the road from where it was stolen." Arnold told the Defendant he did not want to purchase a stolen four-wheeler.

Based on the evidence, the jury could reasonably infer from the circumstances that the Defendant was aware that the green four-wheeler was stolen property. The State presented ample proof for a trier of fact to find, beyond a reasonable doubt, that the Defendant knowingly possessed a stolen four-wheeler worth more than $1,000, without the owner's consent, and continued to exercise control over the vehicle with the intent to deprive the owner of the same. Here, the jury considered the Defendant's explanation of the

circumstances and rejected it in favor of the prosecution's theory. See Bland, 958 S.W.2d at 659. It was the prerogative of the jury to evaluate the credibility of the witnesses and to weigh the evidence, and this court will not substitute its inferences for those of the trier of fact. See State v. Evans, 108 S.W.3d 231, 236-27 (Tenn. 2003) (citing State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000)). We conclude that the evidence was sufficient to support the Defendant's conviction for theft. Accordingly, he is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the Madison County Circuit Court.

_____
CAMILLE R. McMULLEN, JUDGE