IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 23, 2022

## STATE OF TENNESSEE v. DAVID PAUL BEETS

**Appeal from the Criminal Court for Knox County**
**No. 112723      Scott Green, Judge**

_____

### No. E2021-00773-CCA-R3-CD

_____

The defendant, David Paul Beets, appeals his Knox County Criminal Court jury convictions of possession with intent to sell more than .5 grams of methamphetamine within 1,000 feet of a private school, simple possession of heroin, hydrocodone, and marijuana, and driving on a suspended license, arguing that the evidence was insufficient to establish that he sold drugs in a drug-free zone or that his license had been suspended. We affirm the drug conviction but reverse the conviction of driving on a suspended license and dismiss that charge.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Dismissed in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gerald L. Gulley, Knoxville, Tennessee, for the appellant, David Paul Beets.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charme P. Allen, District Attorney General; and Hector Sanchez, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Knox County Grand Jury charged the defendant with one count of the possession with the intent to sell or deliver more than .5 grams of methamphetamine within 1,000 feet of a private school,[1] one count of simple possession of heroin, one count of simple possession of hydrocodone, one count of simple possession of marijuana, one count

---

[1]      By agreement of the parties the phrase "or deliver" was stricken from the indictment.

of possession of drug paraphernalia, and one count of driving on a suspended license. All of the offenses occurred on July 4, 2017.

At the defendant's October 2018 trial, Knoxville Police Department ("KPD") Officer Kevin Varner testified that on July 4, 2017, he responded to a call that a motorist was "passed out behind the wheel of a vehicle" in the "Western Avenue area, right there near McKamey and Palmetto, right near the Pilot." Officer Varner found the defendant "passed out" behind the wheel of "a white GMC Sierra Pickup" that was idling. When Officer Varner approached the driver's side window, he observed "a beige metal canister that's typically carried for medication" in the truck's center console. Officer Varner woke the defendant, instructed him to turn the truck off, and asked him to step out of the vehicle. He patted the defendant down and, after getting the defendant's consent, searched the defendant's pockets, where the officer found "some marijuana and some other drugs." Officer Varner placed the defendant under arrest and continued to search his person.

As Officer Varner searched the defendant, Officer Brian Mullane arrived with his dog and ran the dog around the vehicle. The dog indicated by its actions that the defendant's truck contained illegal drugs, so the officers searched the defendant's truck. They found "a safe in the driver side floorboard area of the truck that would have been at his feet had he still been in the vehicle." The defendant indicated that the safe belonged to him and gave the officers the key to the safe as well as his consent for them to open it. The officers found "some heroin[] in the vehicle, some marijuana, and some methamphetamine" as well as "some more drugs inside the safe." Officer Varner qualified his testimony by saying that he was "not a hundred percent sure what I pulled out of his pocket or what I pulled out of the vehicle, it's all in my warrant." Ultimately, officers confiscated "a wax paper containing a black tar substance believed to be heroin[]," a "glass vile containing an off-white substance," two "stamped baggies containing [a] substance believed to be methamphetamine," several "plastic baggies containing marijuana," and pill bottles "containing four pills marked as V3605." He explained that he also found a "purple plastic container, a green plastic container, a prescription paper, and . . . assorted plastic baggies." The "prescription paper" was for "another individual." Officer Varner also described "what appears to me to be a drug ledger of some sort" of the type "that people typically keep on them for their sales."

Officers also found a cellular telephone inside the defendant's truck. The defendant gave the officer permission to examine the telephone and "he put the swipe pattern in the phone himself for us to look at it." Officers took from the safe and the defendant's person a total amount of currency that exceeded $1,000.

As the encounter continued, the defendant told Officer Varner that he had traveled from his McKamey Road residence to the Pilot on Western Avenue. Officer

Varner testified that the defendant specifically told them that "[h]e traveled McKamey Road to Western, then took a left on Western and drove up to the Pilot."

Given the amount of narcotics and currency and the absence of any drug paraphernalia on the defendant's person or in the vehicle, Officer Varner referred the case to the Organized Crime Unit.

During cross-examination, Officer Varner conceded that the "prescription paper" was actually a prescription made by an optometrist for eyeglasses.

During redirect examination, Officer Varner testified that he charged the defendant with driving while his driver's license was suspended based upon an "NCIC" search, which indicated that the defendant's driver's license had been suspended in April 2017 for failure to pay fines and costs.

Investigator Brandon Stryker with the KPD Organized Crime Unit testified as an expert in the field of narcotics investigation. Investigator Stryker interviewed the defendant following his arrest. During that interview, the defendant confirmed that he had given Officers Varner and Mullane permission to examine his cellular telephone and then showed Investigator Stryker how to unlock the telephone. Investigator Stryker examined the text and Facebook messages on the telephone and discovered some 31 messages that he believed, based upon his training and experience, indicative of drug trafficking. Screen shots of those messages were exhibited to Investigator Stryker's testimony. Investigator Stryker went through the messages, meticulously explaining the jargon and how it related to the illegal drug trade. He explained the various code words and phrases commonly used by those in the illegal drug trade to refer to varying amounts of heroin and methamphetamine as well as the common resale values for those quantities of drugs. Investigator Stryker testified that it was his opinion, based upon the packaging of the methamphetamine discovered in the defendant's possession and the text messages, that the defendant "was engaged in the sale of methamphetamine." He said that the messages indicated "a continued activity of over a month or approximately a month" at the time of his arrest.

Investigator Stryker testified that during his interview with the defendant, the defendant told Investigator Stryker that "he just went straight to the Pilot on Western Avenue from his house on McKamey." He added,

> The route that he told me during the interview was that he took his road, McKamey, and I believe he took it to Ball Camp, and then from Ball Camp he -- I'm sure -- I think -- he would've had to hit a smaller connecting street and then hit Western

-3-

Avenue, and then the Pilot would've been on his right once he made a right-hand turn.

Donna Roach, the office manager/administrative technician at the Knoxville, Knox County, Knoxville Utilities Board Geographic Information System ("KGIS"), testified as an expert in geographic information systems. The State exhibited to her testimony maps showing that the defendant's residence was within 1,000 feet of the "buffer zone" of both a daycare and the Rivers Edge Christian Academy and that the Pilot where the defendant was arrested was not within "a buffer zone . . . of a thousand feet" from the Rivers Edge Christian Academy. A stipulation provided that the private school was operational at the time of the defendant's arrest.

Forensic testing established that, of the items seized from the defendant, the "gray substance" contained heroin, that the "orange tablet" contained hydrocodone, that the "crystalline substance" was methamphetamine, and that "the plant material" was marijuana.

Following a *Momon* colloquy, the defendant elected not to testify and chose to present no proof. The jury convicted the defendant as charged. The trial court, acting as 13th juror, set aside the jury's verdict of guilty of possession of drug paraphernalia in Count 5 and entered a judgment of acquittal on that count.

At the sentencing hearing, the trial court imposed the agreed sentence reached by the parties: 15 years for the defendant's conviction of possession with intent to sell methamphetamine, sentences of 11 months and 29 days for each of the defendant's convictions of simple possession, and a sentence of six months for the defendant's conviction of driving on a suspended license. The court aligned all of the sentences concurrently, for a total effective sentence of 15 years' incarceration.

The defendant appeals, arguing that the evidence was insufficient to establish that he possessed methamphetamine with the intent to sell it within 1,000 feet of a private school and that the evidence was insufficient to establish that his driver's license was suspended at the time of the offenses. The State asserts that sufficient evidence supports each of the defendant's convictions.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331

S.W.3d at 379. The verdict of the trier-of-fact resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.* In a bench trial, the trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978).

### *Drug Possession*

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). A violation of Code section 39-17-417(a)(4) is a Class B felony when the controlled substance involved is .5 grams or more of cocaine or methamphetamine. At the time of the offenses in this case, a violation of Code section 39-17-417 taking place "within one thousand feet (1,000′) of the real property that comprises a public or private elementary school, middle school, secondary school" was required to be "punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation."

The defendant asserts that although the evidence established that he possessed methamphetamine at the time of his arrest at the Pilot on Western Avenue, no evidence established that he possessed methamphetamine "during the time that he may have been within the 1,000 [foot] buffer zone around the Rivers Edge Academy." To the contrary, however, both Officer Varner and Investigator Stryker testified that the defendant gave a detailed description of the route he took as he traveled directly from his home to the Pilot on Western Avenue without making any stops, which route was within 1,000 feet of Rivers Edge Christian Academy as established by KGIS. Our supreme court has explicitly rejected the "argument that simply traveling through a school zone is not enough to apply the provisions of the Drug-Free School Zone Act." *State v. Vasques*, 221 S.W.3d 514, 523 (Tenn. 2007). In our view, the State presented sufficient evidence from which the jury could infer that the defendant possessed the methamphetamine ultimately found inside his vehicle at the Pilot when he traveled from his house to the Pilot, which route took him through a drug-free school zone.

### *Driving on Suspended License*

"A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained . . . at a time when the person's privilege to do so is . . . suspended . . . commits a Class B misdemeanor." T.C.A. § 55-50-504(a)(1).

The defendant argues that Officer Varner's testimony that a check of the "NCIC" showed that the defendant's driver's license had been suspended in April 2017 was insufficient to support his conviction of driving on a suspended license. We agree. To support a conviction for driving on a suspended license, the State must establish beyond a reasonable doubt that the defendant's license was suspended at the time he was driving. This is easily done by submitting a certified copy of the defendant's driving record. The State did not make even this most rudimentary effort to establish the status of the defendant's license. Without some showing that the "NCIC" records reviewed by Officer Varner were, in fact, an accurate reflection of the status of the defendant's driver's license, his testimony about the "NCIC" records cannot, standing alone, support the defendant's conviction.

Accordingly, we reverse the defendant's conviction for driving on a suspended license and dismiss that charge but affirm the judgments of the trial court in all other respects.

_____
JAMES CURWOOD WITT, JR., JUDGE